**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY, as Subrogee of Standex International Corporation, and STANDEX INTERNATIONAL CORPORATION, <br><br> PLAINTIFFS, <br> v. <br><br> STEVEN THOMAS D/B/A THOMAS WHOLESALE AND SALVAGE, JASPER CREEK, LLC, and UNION COUNTY, MISSISSIPPI, acting by and through the Board of Supervisors for the Third Supervisors District of Union County, Mississippi, <br><br> DEFENDANTS. | Case No.: 3:20cv180-DMB-RP <br><br> ELECTRONICALLY FILED |

## COMPLAINT

COME NOW Plaintiffs Factory Mutual Insurance Company (hereinafter "Factory Mutual" or "Plaintiff") as subrogee of Standex International Corporation and Standex International Corporation (hereinafter "Standex"), by and through the undersigned counsel, and hereby bring forth this Complaint against Defendants Steven Thomas d/b/a Thomas Wholesale and Salvage ("Thomas Wholesale"), Jasper Creek, LLC ("Jasper Creek"), and Union County, Mississippi, acting by and through the Board of Supervisors for the Third Supervisors District of Union County, Mississippi ("Union County"), as follows:

## NATURE OF THE ACTION

1. This subrogation action arises from a fire (the "Fire") that occurred on June 26, 2019 at a 480,000 sq. ft. multi-tenant warehouse building (the "Building") co-owned by Defendants Jasper Creek and Union County and located at 922 State Highway 15 N., New Albany,

1

Union County, Mississippi (the "Property"). The Fire originated within the southwest portion of the Building leased by Union County to Jasper Creek and then sub-leased by Jasper Creek to Thomas Wholesale. This action is based upon the Defendants' negligent conduct, which caused and allowed the Fire to spread from its origin at an accelerated rate, causing total destruction and damage to Standex's finished product inventory stored within the southeast portion of the Building owned by Jasper Creek and/or Union County and leased by Jasper Creek to Standex.

## PARTIES

2. Plaintiff Factory Mutual is and was at all times material hereto, a Rhode Island corporation with its principal place of business located in Johnston, Rhode Island. Factory Mutual is and was at all times material hereto engaged in the insurance business and licensed to issue insurance policies in the State of Mississippi.

3. Plaintiff Standex is and was at all times material hereto, a Delaware corporation with its principal place of business located in New Hampshire. Standex is and was at all times material hereto licensed to conduct business in the State of Mississippi.

4. Defendant Steven Thomas d/b/a Thomas Wholesale and Salvage ("Thomas Wholesale") is an adult resident citizen of the State of Mississippi operating Thomas Wholesale and Salvage as a sole proprietorship with a principal place of business located at 1115 City Ave., N. Ripley, Mississippi 38652. Thomas Wholesale was at all times material hereto involved in, among other things, the operation of a wholesale furniture showroom and storage warehouse within approximately 75,000 square feet of floor space within the southwest portion of the Building.

5. Defendant Union County is and was at all times material hereto a political subdivision of the State of Mississippi and is subject to the jurisdiction of this Court. Union County

is and was at all times material hereto the record owner of the portion of the Property and the portion of the Building wherein the Fire originated and from which the Fire quickly spread.

6. Defendant Jasper Creek is and was at all times material hereto a Mississippi limited liability company with its principal place of business located at 857 Highland Park Drive, Tupelo, Mississippi 38801. Jasper Creek is and was at all times material hereto the record owner of a portion of the Property and the tenant, by assignment, of the portion of the Building wherein the Fire originated and from which the Fire quickly spread and ultimately destroyed Standex's property.

## JURISDICTION AND VENUE

7. This Federal Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 based upon complete diversity of citizenship between the parties and a controversy, exclusive of interest and costs that exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars.

8. Venue is proper in the Northern District of Mississippi under 28 U.S.C. §1391 because the Building is located in New Albany, Union County, Mississippi, the subject fire occurred in New Albany, Union County, Mississippi, and the occurrence and witnesses remain within the Northern District of Mississippi.

## GENERAL ALLEGATIONS

9. Plaintiffs incorporate by reference the preceding averments as though fully set forth herein at length.

10. At all times material hereto Jasper Creek and Union County were the fee simple owners of the Building and the Property.

11. At all times material hereto Jasper Creek, either as owner and/or as tenant by

3

assignment to Union County, leased approximately 155,000 sq. ft. of floor space within the southeast portion of the Building (the "Standex Leased Premises") to Standex for warehouse storage pursuant to a written commercial lease agreement dated July 1, 2009 (the "Lease"). A true and accurate copy of the Lease is attached hereto as **Exhibit 1**.

12. Under the Lease, Jasper Creek was obligated at all times to maintain not only the Building but also the Property.

13. Under the Lease, Jasper Creek was also obligated to maintain insurance for any property damage caused by its agents, employees, or representatives on or at the Standex Leased Premises arising from Jasper Creek's acts or omissions.

14. At all times material hereto, Union County leased to Jasper Creek, and then Jasper Creek, pursuant to a written commercial lease agreement (the "TW Lease"), subleased to Thomas Wholesale approximately 75,000 sq. ft. of floor space within the southwest portion of the Building (the "TW Leased Premises"). A true and accurate copy of the TW Lease is attached hereto as Exhibit 2.

15. At all times material hereto, Thomas Wholesale used and operated the TW Leased Premises for a furniture showroom open to the general public and as a furniture storage warehouse.

16. At all times material hereto, the Mississippi Fire Prevention Code, Miss. Code Ann. § 45-11-101, *et seq.* (the "MFPC"), was in full force and effect in Union County, MS.

17. At all times material hereto, the State Fire Marshal of the State of Mississippi ("SFM") was authorized and empowered to, and did promulgate rules and regulations for the enforcement of the MFPC pursuant to Miss. Code Ann. § 45-11-105(1).

18. At all times material hereto, the SFM promulgated rules and regulations to prevent the loss of life and property from fire and other related hazards through direct action and

implementation, interpretation, and enforcement of the MFPC. *See* CMSR 19-007-007, Rule 7.01(A) and (B).

19. At all times material hereto, the International Fire Code (IFC) and the International Building Code (IBC) where the fire and building codes adopted and recognized by the SFM as the MFPC. *See* CMSR 19-007-007, Rule 7.02(1)(B).

20. At all times material hereto, the International Fire Code (IFC) and the International Building Code (IBC), as the fire and building codes adopted as the MFPC, where the fire and building codes adopted by Union County. *See* CMSR 19-007-007, Rule 7.02(1)(B).

21. At all times material hereto, the term "building" as that term is used within the MFPC was defined to mean *"[a]ll buildings owned by* the State or State Agencies or *political subdivisions*" as well as "[a]ny building, the permits for construction of which are issued subsequent to July 1, 2004, upon the request of any interested person." *See* CMSR 19-007-007, Rule 7.02.4(A)(1).

22. At all times material hereto, the State of Mississippi had adopted the Standards of the National Fire Protection Association for the Storage and Handling of Liquefied Petroleum Gases (NFPA 58). *See* Miss. Code Ann. § 75-57-9.

23. At all times material hereto, NFPA 58 governed the use and storage of liquefied compressed gas containers within all domestic, commercial and industrial premises or buildings located within the State of Mississippi.

24. At the time of the Fire, Thomas Wholesale was storing furniture containing expanded foam and plastics, which made Thomas Wholesale's use of the Building a Group S-1 moderate hazard occupancy under the IFC/MFPC.

25. At the time of the Fire, Thomas Wholesale also had twenty-four (24) propane gas

cylinders ranging in size from 20 lbs. to 100 lbs. located throughout its leased premises.

26. All of these propane gas tanks were present within the TW Leased Premises for months, if not years, before the date of the Fire.

27. The IFC/MFPC and NFPA 58 prohibit and make unlawful the storage of large (greater than 20 lbs.) propane gas tanks indoors.

28. The IFC/MFPC and NFPA 58 mandate that a properly designed and maintained automatic sprinkler system must be provided throughout an entire building containing an S-1 moderate hazard occupancy.

29. The IFC/MFPC and NFPA 58 mandate that a properly designed and maintained automatic sprinkler system must be provided throughout an entire building containing the type and quantity of propane gas cylinders like those located throughout TW's Leased Premises on the date of the Fire.

30. At the time of the Fire, Standex used its leased premises to store its inventory of Master-Bilt commercial "cabinet cooling units."

31. The inventory Standex was storing was almost entirely metal enclosed refrigerated coolers, which made Standex's use of the Building an S-2 low hazard occupancy under the IFC/MFPC.

32. The IFC/MFPC requires physical separation between tenant spaces, to prevent the spread of fire from one premises to another, and requires Union County/Jasper Creek/Thomas Wholesale, as the owner/landlord/tenant/sub-tenant of the higher hazard occupancy, to install fire barrier walls to separate the TW Leased Premises from the Standex Leased Premises.

33. The IFC/MFPC mandates that an approved water supply system, capable of supplying the required fire flow for fire protection be provided to the Building at all times.

34. The IFC/MFPC mandates that all fixed fire-extinguishing systems and devices, and fire-warning systems not be rendered inoperative.

35. The IFC/MFPC mandates that all fire hydrants be maintained in operative condition at all times and be repaired when defective.

36. Under the IFC/MFPC the owner of the Property is responsible for correction and abatement of violations of the IFC/MFPC.

37. On June 26, 2019, the Fire originated within the TW Leased Premises owned by Union County and spread radially eventually consuming all other sections of the Building, including the sections leased to Standex.

38. At the time of the Fire, there was no separation between Thomas Wholesale's S-1 storage occupancy and Standex's S-2 low hazard storage occupancy, in violation of the IFC/MFPC.

39. At the time of the Fire, there were no working automatic sprinkler systems anywhere within the Building, in violation of the IFC/MFPC.

40. At the time of the Fire, the underground water and fire hydrant systems servicing the Property and the Building were out of service, also in violation of the IFC/MFPC. As a result, there was no way for the fire department to control, much less extinguish, the Fire.

41. At the time of the Fire, and in violation of the IFC/MFPC and NFPA58, Thomas Wholesale had large propane tanks within the origin area of the fire that contributed to the rapid growth and spread of the Fire.

42. At the time of the Fire, there were no fire rated wall barriers between any tenant spaces and access to the Building was not controlled by any of the Defendants.

43. But for the afore-mentioned conditions, the Fire would have been limited in scope

to the TW Leased Premises, owned by Union County, leased by Union County to Jasper Creek, and subleased by Jasper Creek to Thomas Wholesale.

44. Instead, these conditions led to the rapid spread of this Fire, which ultimately engulfed Standex's Leased Premises and destroyed its inventory.

45. At all times pertinent hereto, Factory Mutual provided property and business interruption insurance to its insured, Standex, under FM Global Policy No. 1041682 (the "Policy") for the property that Standex owned at the Building.

46. As a result of the Fire, Standex sustained significant damages, losses and expenses in excess of $9,500,000.00. These damages include not only property damage to Standex's product inventory, but also business interruption damages caused by the destruction of Standex's inventory.

47. Pursuant to the terms and conditions of the Policy, Factory Mutual has made payments to Standex for property damage losses in the total amount of $9,000,000.00, exclusive of Standex's $500,000.00 deductible.

48. In accordance with the common law principles of equitable and/or legal subrogation and the terms of the Policy, Factory Mutual is subrogated to the rights of Standex with respect to the payments it has made or will make to compensate Standex for the aforementioned property damage, and seeks recovery of the amounts it has paid to Standex under the Policy.

49. Standex seeks recovery of, and has a claim for, its $500,000 deductible under the Policy.

## COUNT I
*Negligence and Negligence Per Se: All Defendants*

50. Plaintiffs incorporate by reference the preceding averments as though fully set

8

forth herein at length.

51. Union County and Jasper Creek as co-owners and operators of the Building and Property, and Jasper Creek and Thomas Wholesale, as tenants/sub-tenants/operators of the Building (inclusive of the TW Leased Premises) and the Property, owed a duty to Standex to act with reasonable care in their maintenance, management, ownership and operation of the Building, the TW Leased Premises and the Property.

52. All Defendants had a responsibility to keep apprised of all codes, standards, and regulations, including but not limited to the IFC/MFPC and NFPA 58, as they relate to the use, operation, maintenance and upkeep of a commercial property as a multi-tenant storage facility.

53. All Defendants had a responsibility to comply with all codes, standards, and regulations, including but not limited to the IFC/MFPC and NFPA 58, as they relate to the use, operation, maintenance and upkeep of a commercial property as a multi-tenant storage facility.

54. All Defendants were aware or should have been aware for several years before the date of the Fire that there were no working automatic sprinkler systems anywhere within the Building.

55. All Defendants were aware or should have been aware for several years before the date of the Fire that the underground water system and fire hydrants servicing the Building and the Property were defective, out of service and non-operational.

56. All Defendants were aware or should have been aware for several years before the date of the Fire that physical separation between tenant spaces was necessary to prevent the spread of fire from one premises to another.

57. All Defendants were also aware or should have been aware for several years before the date of the Fire, that pursuant to the IFC/MFPC and NFPA 58, the Building required

9

the installation of an automatic sprinkler system throughout the entire Building due to Thomas Wholesale's use of the Building.

58. All Defendants were aware or should have been aware for several years before the date of the Fire that pursuant to the IFC/MFPC and NFPA 58, the Building and Property required a water supply system capable of supplying the required fire flow for fire protection.

59. All Defendants were aware or should have been aware for several years before the date of the Fire that pursuant to the IFC/MFPC, all fixed fire-extinguishing systems and devices located within or around the Building or on the Property could not be rendered inoperative.

60. All Defendants were aware or should have been aware for several years before the date of the Fire that pursuant to the IFC/MFPC, all fire hydrants had to be maintained in operative condition at all times and be repaired when defective.

61. All Defendants were also aware or should have been aware for several years before the date of the Fire, that Thomas Wholesale had twenty-four (24) propane cylinders ranging in size from 20 lbs. to 100 lbs. located throughout its leased premises.

62. All Defendants, regardless of any duty they owed to Standex to comply with the IFC/MFPC, were aware or should have been aware for several years before the date of the Fire, that if a fire did break out within the TW Leased Premises, that due to the lack of an automatic sprinkler system, lack of sufficient water supply for fire-fighting purposes, lack of working fire hydrants and lack of physical separation between tenant spaces, that there would be no way the fire department could control, much less extinguish a fire, before it spread into Standex's Leased Premises and that if it did so that the Fire would damage and destroy Standex's property.

63. All Defendants, as the owner(s), operator(s), tenant/subtenant(s) of the TW Leased

10

Premises had a duty to comply with the IFC/MFPC and NFPA 58 and to remedy any violations or hazardous conditions present within the portion of the Building and the Property owned by Union County.

64. All Defendants, as the owner(s), operator(s), tenant/subtenant(s) of the TW Leased Premises, had a duty to exercise reasonable and ordinary care in their ownership, operation and management of the TW Leased Premises, Building and the Property, a duty to maintain proper safety throughout TW Leased Premises, Building and the Property, and a duty to maintain safety for all materials being used therein in order to avoid any harm to others including an explosion and/or fire at the Building.

65. Notwithstanding their longstanding actual or constructive knowledge of multiple IFC/MFPC and NFPA 58 violations, at no point in time prior to the Fire did any of the Defendants address any of the afore-mentioned violations of the IFC/MFPC and NFPA 58, all of which contributed to the rapid spread of the Fire that destroyed Standex's inventory.

66. Notwithstanding the aforementioned duties, all Defendants breached their respective duties to Standex and were negligent in one or more of the following ways:

(a) Defendants were negligent in their operation, use and occupancy of the subject Building and TW Leased Premises resulting in the subject Fire and the rapid spread and growth of the Fire as they operated, or allowed Thomas Wholesale to operate, a storage warehouse containing highly combustible and hazardous materials (foam based/plastic wrapped furniture and 24 propane tanks) without a fire protection system to match that use and occupancy;
(b) Defendants were negligent in their maintenance of the subject Building, the TW Leased Premises and Property as they owned/operated, and allowed Thomas Wholesale to operate, a storage warehouse containing highly combustible and hazardous materials (foam/plastic based and plastic wrapped furniture and 24 propane tanks) without properly maintaining the TW Leased Premises, the Building and the Property in such a manner that would have prevented the rapid spread and growth of the Fire;
(c) Defendants were negligent in their failure to provide proper fire safety protection for the subject Building, TW Leased Premises and

11

        Property which resulted in the Fire and the rapid spread and growth of the Fire;

(d) Defendants were negligent in their failure to take the necessary precautions, and provide adequate remedy, and proper safety from the known hazards and presence of propane gas within the TW Leased Premises which caused the rapid spread and growth of the Fire;

(e) Defendants were negligent in their operation, use and occupancy of the subject Building and TW Leased Premises in that they failed to adequately secure the Building and/or take preventative measures to eliminate or reduce the risk of an arson attack; and

(f) Defendants were per se negligent in permitting numerous violations of the fire safety and building code laws to occur, which contributed to the rapid spread and growth of the Fire.

67. Standex was within the class of persons intended to benefit and be protected by the enactment of the IFC/MFPC and NFPA 58 because it was a tenant-occupier of the Building and, as such, was subjected to the risk of harm presented by these Defendants' failure or refusal to comply with the applicable fire safety codes for fire protection, property management and property maintenance.

68. As a proximate and direct result of the aforesaid negligence, negligence per se, and/or negligent omissions of the Defendants, the Fire spread more rapidly or disastrously than it would have had Defendants exercised due care under the circumstances, thereby resulting in the destruction of Standex's inventory and related damages to Standex, in an amount in excess of $9,500,000.00.

69. Pursuant to the Policy, Factory Mutual has made payments to Standex in the amount of $9,000,000.00, exclusive of Standex's deductible. Therefore, Factory Mutual and Standex are entitled to compensation from Defendants for all of their damages, costs and expenses incurred as a result of the subject Fire.

12

## COUNT II
### *Breach of Contract: Jasper Creek*

70. Plaintiffs incorporate by reference the preceding averments as though fully set forth herein at length.

71. The Lease between Standex (as tenant) and Jasper Creek (as landlord) specifically provides that Standex would use and occupy its Leased Premises as a storage warehouse.

72. At no time material hereto, did Standex cause the Leased Premises to be in violation of any applicable building code or fire prevention/life safety code, and as of June 26, 2019, the date of the subject Fire, Standex was a tenant in good standing under the Lease and was using the Leased Premises consistent with the "use" provisions of the subject Lease.

73. Jasper Creek was responsible under the Lease to maintain the Building, Standex's Leased Premises and the entire Property.

74. Jasper Creek was responsible under the Lease to make all repairs, additions and improvements to the Building, Standex's Leased Premises and to the Property that were necessary for the Property to comply with any governing building and fire safety codes.

75. Jasper Creek was responsible under the Lease to make all additions and improvements to the Building, Standex's Leased Premises and to the Property that were necessary for the safe and uninterrupted use and occupancy of the Standex Leased Premises as a storage warehouse.

76. At the time of the Fire on June 26, 2019, the Building did not have a working fire protection system.

77. At the time of the Fire on June 26, 2019, the Property did not have sufficient water supply or pressure to serve the water based fire protection systems (e.g., hydrants) present on the Property.

78. Jasper Creek, as co-owner of the Building, failed to take the necessary actions/precautions to prohibit Thomas Wholesale from storing large propane tanks within the Building that contributed to the rapid growth and spread of the Fire.

79. At the time of the Fire there were no barriers between any tenant spaces, and access to the Building was not controlled properly by Jasper Creek.

80. But for the afore-mentioned conditions, the Fire would have been limited in scope to the area of fire origin. Instead, these conditions led to the rapid spread of this Fire, which ultimately engulfed Standex's Leased Premises and destroyed its inventory.

81. Jasper Creek's failure to install an operational fire sprinkler system within the Building constitutes a material breach of the Lease.

82. Jasper Creek's failure to maintain and/or install a fire pump and water supply system on the Property to give adequate water pressure for fire suppression efforts on the day of the Fire constitutes a material breach of the Lease.

83. Jasper Creek's failure to erect barriers between tenant spaces and failure to control access into the Building, conditions which caused or contributed to the Fire and the rapid spread of the Fire, constitutes a material breach of the Lease.

84. Jasper Creek's failure to take the necessary precautions, and provide adequate remedy and proper safety from the known hazards associated with the presence of propane on the interior of the Building, which contributed to the rapid spread and growth of the Fire, constitutes a material breach of the Lease.

85. As a direct and proximate result of such material breaches of the Lease, the Fire spread more rapidly or disastrously than it would have had Jasper Creek fulfilled its contractual

obligations, thereby resulting in the destruction of Standex's inventory and related damages to Standex, in an amount in excess of $9,500,000.00.

86. Pursuant to the Policy, Factory Mutual has made payments to Standex in the amount of $9,000,000.00 exclusive of Standex's deductible. Therefore, Factory Mutual and Standex are entitled to compensation from Defendants for all of their damages, costs and expenses incurred as a result of the subject Fire.

## COUNT III
### *Gross Negligence: Jasper Creek*

87. Plaintiffs incorporate by reference the preceding averments as though fully set forth herein at length.

88. Jasper Creek had actual or constructive knowledge of the hazardous conditions affecting the Building and the Property (lack of water supply, lack of working hydrants, lack of adequate sprinkler protection, and lack of fire separation walls) for many years before the date of the Fire and voluntarily refrained from taking the appropriate action to remedy the same with heedless indifference to results, which may follow.

89. For many years prior to the date of the Fire, Jasper Creek's property and/or liability insurers informed Jasper Creek (or Jasper Creek's insurance agents) about the afore-mentioned deficiencies in the fire protection systems, and Jasper Creek did nothing to correct those deficiencies.

90. For many years prior to the date of the Fire, Jasper Creek's property and/or liability insurers informed Jasper Creek (or Jasper Creek's insurance agents) about how the afore-mentioned deficiencies in the fire protection systems could lead to a catastrophic loss of property and/or life, and Jasper Creek did nothing to correct those deficiencies.

91. For many years before the date of the Fire, Jasper Creek also had actual or constructive knowledge of the unsafe condition created by their failure to secure the Building to prevent unauthorized access into the same. Indeed, on numerous occasions prior to the Fire, vagrants were found walking around inside of the Building and had to be removed from the Building by public safety officers.

92. In spite of having knowledge of the inherent risks and hazardous conditions present on the Property and within the TW Leased Premises, Jasper Creek with reckless disregard for the rights of Standex, failed to safely and properly maintain and/or manage the TW Leased Premises and the Property.

93. At all times material hereto, Jasper Creek had actual knowledge of the existence of the afore-described conditions, hazards, or dangers present within or upon the Building, the TW Leased Premises and the Property, which could result in catastrophic harm to persons or property.

94. At all times material hereto, Jasper Creek knew that the Building, the TW Leased Premises and the Property required significant additions and improvements in order for it to be used and operated safely as multi-tenant storage facility.

95. Dispute having such knowledge, Jasper Creek, with reckless disregard for the rights of Standex, and an utter lack of concern for the safety of persons and property, failed, prolonged, and purposefully refused to make the improvements and additions to the Building, the TW Leased Premises, and the Property as required by the circumstances, and as recommended by its property and/or liability insurers.

96. The conduct of Jasper Creek as described herein demonstrates an utter lack of concern for the safety of others, and such a reckless disregard for the rights of others so as to

constitute a conscience indifference to the foreseeable consequences, including the Fire and resulting damage at issue.

97. As a direct and proximate result of the gross negligence of Jasper Creek, the Fire originated within the TW Leased Premises and spread more rapidly or disastrously than it would have had Jasper Creek exercised due care under the circumstances, thereby resulting in the destruction of Standex's inventory and related damages to Standex in an amount in excess of $9,500,000.00.

98. Pursuant to the Policy, Factory Mutual has made payments to Standex in the amount of $9,000,000.00, exclusive of Standex's deductible. Therefore, Factory Mutual and Standex are entitled to compensation from Jasper Creek for all of their damages, costs and expenses incurred as a result of the subject Fire.

**WHEREFORE**, Plaintiffs respectfully pray as follows:

1. That proper process issue and that the Defendants be served with a copy of this Complaint;

2. That Plaintiffs be awarded a judgment against each of the Defendants on Count I and against Jasper Creek on Counts II and III in an amount to be proven at trial but presently estimated to be not less than $9,500,000.00, together with pre-judgment interest and post-judgment interest at the maximum allowable rate; and

3. That Plaintiffs be awarded a judgment against all Defendants for their costs and expenses, and that Plaintiffs be awarded a judgment against Jasper Creek for their attorney's fees;

4. That they have such other, further and general relief to which they may be entitled.

Respectfully submitted,

/s/ H. Scot Spragins
H. Scot Spragins, MSB #7748
Hickman, Goza & Spragins, PLLC
P. O. Drawer 668
Oxford, MS 38655-0668
sspragins@hickmanlaw.com
(662) 234-4000

AND

Jefferson C. Orr (Pro Hac Vice Application Submitted)
S. Joe Welborn (Pro Hac Vice Application Submitted)
SMITH CASHION & ORR, PLC
One American Center
3100 West End Ave.
Suite 800
Nashville, Tennessee 37204
jorr@smithcashion.com
jwelborn@smithcashion.com
(615) 742-8555

*Co-Counsel for Plaintiffs Factory Mutual Insurance Company, as subrogee of Standex International Corporation, and Standex International Corporation*